# EXHIBIT A



**THE STATE OF NEW HAMPSHIRE**
**INSURANCE DEPARTMENT**

21 SOUTH FRUIT STREET SUITE 14
CONCORD, NEW HAMPSHIRE 03301

**INCOMING LEGAL**

**JUN 2 3 2019**

John Elias
Commissioner

Alexander K. Feldvebel
Deputy Commissioner

**JULY 19, 2019**

**CERTIFIED MAIL**

**7016 1370 0001 3383 2021**

Saverio M. Rocca, Esq.
**Ace American Insurance Company**
**436 Walnut Street**
**Philadelphia, PA 19106**

Dear Sir or Madam:

You are hereby notified of the service upon me as attorney for your Company of a **Summons in a Civil Action**.

**TRT Development Company, Inc.and Omni Mount Washington, LLC v. ACE American Insurance Company,** principal defendant(s).

This process is brought in the **Coo Superior Court of Coos County.** You must respond to this **Summons in a Civil Action** in accordance with the requirements of the court. Pursuant to RSA 405:10, legal process served upon the Commissioner shall have the same effect as if served personally on the company. Please see attached a copy of this process.

Very truly yours,

John Elias
Insurance Commissioner

Enclosure

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Coos Superior Court
55 School St., Suite 301
Lancaster NH  03584

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION



**Case Name:**  **TRT Development Company, Inc., et al v ACE American Insurance Company**
**Case Number:**  **214-2019-CV-00087**

Date Complaint Filed: July 26, 2019

A Complaint has been filed against ACE American Insurance Company in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| August 16, 2019 | Omni Mount Washington, LLC; TRT Development Company, Inc. shall have this Summons and the attached Complaint served upon ACE American Insurance Company by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |

| September 06, 2019 | Omni Mount Washington, LLC; TRT Development Company, Inc. shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |

| 30 days after Defendant is served | ACE American Insurance Company must electronically file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to ACE American Insurance Company:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

Mark C. Rouvalis, ESQ

ACE American Insurance Company

McLane Middleton Professional Association 900 Elm Street PO Box 326 Manchester NH  03105-0326
36 Walnut Street Philadelphia PA  19106

BY ORDER OF THE COURT

July 02, 2019

(126849)

David P. Carlson
Clerk of Court

**This is a Service Document For Case: 214-2019-CV-00087**
**Coos Superior Court**

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Coos Superior Court
55 School St., Suite 301
Lancaster NH  03584

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:     **TRT Development Company, Inc., et al v ACE American Insurance**
Case Number:   **214-2019-CV-00087**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Coos Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.
1. Complete the registration/log in process.  Click Register and follow the prompts.
2. After you register, click Start Now.  Select **Coos Superior Court** as the location.
3. Select "I am filing into an existing case".  Enter **214-2019-CV-00087** and click Next.
4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.
5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

File Date: 6/26/2019 5:0
Coos Superior C
E-Filed Docu

## STATE OF NEW HAMPSHIRE

COOS, SS.

SUPERIOR COURT
CASE NO.
214-2019-CV-00087

TRT Development Company, Inc. and Omni Mount Washington, LLC

v.

ACE American Insurance Company

## **COMPLAINT**

NOW COMES TRT Development Company, Inc. ("TRT") and Omni Mount

Washington, LLC, ("Omni," collectively the "Plaintiffs" or "Insureds") by their undersigned

attorneys, McLane Middleton, Professional Association, and complains against the defendant

ACE American Insurance Company ("ACE") as follows:

## **INTRODUCTION**

This is an action for declaratory judgment and damages resulting from the insurer's bad

faith claims handling and denial of coverage under a claims-made insurance policy that Plaintiffs

purchased to respond to storage tank spill events. A spill occurred from an insured tank or its

related pipes or appurtenances located at the Plaintiff Omni's Mount Washington Hotel boiler

house in Bretton Woods, New Hampshire. The spill was first observed in the surrounding river

area on or about May 29, 2018. The Plaintiffs immediately responded with emergency action to

contain the spill, under the direction of the Department of Environmental Services. The

Plaintiffs provided notice to the insurer on or about June 20, 2018, within the policy term, as

specified in the policy. The source of the spill was not was not immediately ascertainable.

Despite the timely notice, the insurer did not send an investigator to the site for several months.

The insurer denied coverage on the sole basis that the Insureds had not provided notice to the

insurer within seven days, as specified in the cooperation clause of the insurance policy, which does not make such notice a condition of coverage. As a result of its improper denial, and the breach of the contract, including the breach of the covenant of good faith and fair dealing, the Plaintiffs have been harmed in an amount exceeding the $1 million policy limits, plus attorneys fees, interest and costs.

## I.    PARTIES

1.    Plaintiff TRT is a Delaware corporation with a principal place of business located at 4001 Maple Avenue, Suite 400, Dallas, TX 75219.

2.    Plaintiff Omni Mount Washington, LLC is a Delaware limited liability company with a principal place of business located at 310 Mount Washington Hotel Road, Bretton Woods, New Hampshire 03575.

3.    Upon information and belief, Defendant ACE American Insurance Company ("ACE"), is a Pennsylvania company with a principal place of business located at 36 Walnut Street, Philadelphia, PA 19106.

## II.   JURISDICTION, VENUE AND CHOICE-OF-LAW

4.    This is an action for declaratory judgment pursuant to RSA 491:22, RSA 491:22-a and RSA 491:22-b and for damages.

5.    This court has jurisdiction over this action pursuant to RSA 491:22 and RSA 491:7.

6.    Venue is proper in Coos County because the events giving rise to the allegations in this complaint occurred in Coos County.

7.    New Hampshire law applies to this matter because the policy contains no choice of law provision, New Hampshire is the "principal location of the insured risk" and, therefore,

2

has the most significant relationship to the contract at issue. *See* Ellis v. Royal Ins. Companies, 129 N.H. 326, 300 (1987) ("[t]he contract is to be governed by the law of the state [with] which the contract has its most significant relationship, and, with a contract for insurance, the contact that is given the greatest weight is the principal location of the insured risk."); *see also* K.J. Quinn & Co., Inc. v. Cont'l Cas., 806 F. Supp. 1037, 1040 (D.N.H. 1992) ("In the context of insurance policies, the Supreme Court has consistently ruled that the state with the 'most significant relationship' is the one that is the 'principal location of the insured risk.'"). The principal location of the insured risk is the Omni Mount Washington Resort in Bretton Woods, New Hampshire. New Hampshire law applies to this matter.

## IV. FACTS COMMON TO ALL COUNTS

### STORAGE TANK LIABILITY POLICY

8.      Plaintiffs' Storage Tank Liability Insurance Policy (the "Policy") covered the time period from December 7, 2017 to December 7, 2018. The Policy is attached hereto as Exhibit 1.

9.      The Policy provides coverage for covered aboveground storage tanks, among other things.

10.      The Policy defines a "covered aboveground storage tank" as "a stationary petroleum product-containing tank, and associated piping and appurtenances connected thereto..." Storage Tank Liability Insurance Policy, Exhibit 1 at 3. Each such "covered aboveground storage tank", including the storage tank at issue here, is identified in the "Schedule of Covered Storage Tanks" attached to the Policy.

11.      The Policy had the below listed limits:

   a) $1,000,000 – Per Storage Tank Incident Limit of Liability (Claims and Remediation Costs).

3

    b) $1,000,000 – Aggregate Limit of Liability (Claims and Remediation Costs) for all Storage Tank Incidents.

    c) $1,000,000 – Aggregate Limit of Liability for all Legal Defense Expenses for all Storage Tank Incidents.

    d) $2,000,000 – Total Policy Aggregate Limit of Liability for all Storage Tank Incidents.

12.    Section I. A. of the Policy provides that the Insurer agrees to pay, on behalf of the Insured, for "'claims' and 'remediation costs,' in excess of the deductible amount … arising out of a 'storage tank incident', provided that the 'claim' is first made, or the 'insured' first discovers the 'storage tank incident', during the 'policy period'." Id. The Policy provides that claims must be reported to the Insurer, in writing, during the policy period. Id.

13.    A "storage tank incident" means "a 'pollution condition' resulting from a 'covered underground storage tank' or a 'covered aboveground storage tank." Id. at 5.

14.    A "pollution condition" is defined as "any spilling, leaking, emitting, discharging, dispersing, seeping, escaping or releasing of the contents of any 'covered underground storage tank' or 'covered aboveground storage tank' into surface soils, subsurface soils, surface water, sediments or groundwater." Id. at 4.

15.    The policy states in part on page one:

**THIS POLICY PROVIDES COVERAGE FOR THIRD-PARTY LIABILITY ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THIS POLICY ALSO PROVIDES COVERAGE FOR FIRST PARTY REMEDIATION COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY STORAGE TANK INCIDENTS FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD.**

16.     Written notice of the spill event was provided on or about June 20, 2018, through the Defendant's online reporting system. Such notice was within the policy period as required by the policy.

17.     Section VII, REPORTING AND COOPERATION, subpart A of the Policy provides that the Insured "must see to it that the Insurer receives written notice of any 'claim' or 'storage tank incident' as soon as possible, but in no event more than seven (7) days after a "responsible insured" first because aware of, or should have become aware of, such 'claim' or 'storage tank incident'." Id. at 8.

## NO. 6 FUEL OIL RELEASE AND CLAIM

18.     On May 29, 2018 Omni hotel staff observed evidence of a release of No. 6 fuel oil in the vicinity of the hotel's boiler house. The boiler house is the source of steam and hot water for the Omni Mount Washington Resort and houses one existing old boiler, one newly constructed but currently not active boiler, and two now inoperable boilers. The boiler house also houses a steam powered electrical generation facility. The boiler house facilities are fueled by No. 6 fuel oil that is contained in a 25,000 gallon aboveground storage tank located approximately ninety (90) feet to the southwest of the building. This aboveground storage tank is included in the "Schedule of Covered Storage Tanks" in the Policy. Oil from the tank is piped through above-ground piping which, after entering the building, leads to oil pumps that feed the boiler system.

19.     At the time the release was detected, the source of the release was not known, although it was understood the source was likely in the vicinity of the boiler house. A cause of the release also was not immediately known.

5

20.     Omni contacted an engineering firm, Horizons Engineering Inc. ("Horizons"), to
conduct an emergency response to assess and begin containing the release. Personnel of
Horizons visited the boiler house site on May 29, 2018 and observed what appeared to be No. 6
fuel oil seeping from an embankment immediately to the northeast of the hotel boiler house.
Horizons also observed what appeared to be free-phase oil on the ground and surface water in a
wetland leading into a perennial stream located approximately one-hundred and sixty (160) feet
northeast of the building.

21.     Following an initial assessment of the extent of the release of No. 6 fuel oil, Omni
staff notified the Town of Carrol Fire Department, the National Response Center, and the New
Hampshire Department of Environmental Services ("NHDES"). Omni also contacted a regional
environmental cleanup contractor, to immediately commence emergency cleanup efforts.

22.     On the afternoon of May 29, 2018, staff of NHDES visited the boiler house site
and emergency remedial efforts were implemented to prevent any further migration of No. 6
fuel oil from the vicinity of the boiler house. At this time, neither Omni, NHDES, nor Omni's
consultants and contractors had determined the source of the release. The immediate focus was
to respond to the flow and to prevent and contain any further release of No. 6 fuel oil in the
areas affected by the spill.

23.     In correspondence dated June 7, 2018, NHDES explained that although it knows
Omni has been working with its contractors to respond to the release, "the discharge has not yet
been stopped or contained." NHDES instructed Omni to (1) cease discharging oil from the
pumps in the boiler house, and (2) stop discharging heating system water, including condensate
and any other system byproduct, to the boiler house, its vicinity, and the adjacent wetland.

6

24.    As of June 7, 2018, the release of No. 6 fuel oil had not been stopped or contained, nor had a cause or source been identified.

25.    On June 12, 2018, Horizons submitted a No. 6 Fuel Oil Soil Impact Delineation Work Plan to NHDES. This work plan explained that "a point-source for the release has not been identified" but that "it is thought that the origin of the release is located on the interior portion of the boiler house building." June 12, 2018 ltr to NHDES re #6 Fuel Oil Impact Delineation Work Plan.

26.    As of June 12, 2018, a source or cause of the No. 6 fuel oil release had not yet been identified. Upon information and belief, it was understood that there had been a release from one or more of the pumps located in the boiler house. It had not been determined whether this was the only source of the release.

27.    On June 20, 2018, Omni notified ACE in writing of the release.

28.    On August 14, 2018, Horizons submitted an Initial Response Action report to NHDES. The report concluded that Horizons had not yet determined if the release was due to a recent release or an older release that was subsequently mobilized, or was a combination of releases over time. Horizons explained that a source of the release had not yet been determined but that the source area appeared to be an area inside the boiler building near where two then inoperable boilers and current oil pumps were located.

29.    On September 13, 2018, three months following TRT's notifying ACE of the release, an environmental consultant retained by ACE conducted a site investigation to determine the location of where the release occurred along the aboveground storage tank system.

30.    In e-mail correspondence from a representative for ACE to Marsh Worthem, Omni's insurance broker, on October 4, 2018 ACE explained that after conducting a site visit

7

they "are unable to confirm that the leak occurred from a part and/or component not associated with the [aboveground storage tank] system" and that "[t]he area in which we observed the leak would be considered part of the [aboveground storage tank system]" and that "[t]here is no information to the contrary that would suggest that the leak area was not part of the [aboveground storage tank] system." As a result, ACE explained that they "are unable to deny this claim based on the leak not occurring from the [aboveground storage tank] system" and that "[t]he basis of [their] denial will have to be due to late reporting." ACE, despite confirming that the release at issue was covered under the policy following its investigation nevertheless determined it was electing to deny coverage solely "due to late reporting."

31.     By letter dated October 17, 2018, ACE formally notified Plaintiff TRT that ACE "disclaims coverage under the Policy" and "has determined that it has no obligation to defend, indemnify or reimburse" its Insureds in connection with the release. The October 17, 2018 letter is attached hereto as Exhibit 2. The sole basis for ACE's disclaiming its responsibilities and denying coverage under the Policy was that, in ACE's view, TRT's June 20, 2018 notice of the release of No. 6 fuel oil did not satisfy the seven day reporting and cooperation provision contained in Section VII of the Policy.

32.     Plaintiffs, with the assistance of its consultants and contractors, are continuing to respond to the release in coordination with NHDES. To date, Plaintiffs have spent approximately $1.6 million responding to and remediating the release.

## IV. CAUSE OF ACTION

### COUNT I – DECLARATORY JUDGMENT

33.     Plaintiffs incorporate and re-state the allegations set forth in Paragraphs 1-32 as if fully set forth herein.

8

34.     Pursuant to RSA 491:22, :22-a and 22:b, Plaintiffs seek a declaratory judgment that ACE is obligated to provide coverage under the terms of the policy.

35.     ACE has the burden to prove that the policy does not provide coverage for the spill event.

36.     Without limiting the generality of the declaratory relief requested, Plaintiffs seek a declaration that ACE wrongfully denied coverage on the basis of the seven day reporting and cooperation provision for one or more of the following reasons: that the notice was timely, based on the discovery of the source of the spill; that such denial contradicts the terms of coverage provided on the first page of the policy that the policy responds to covered events occurring within the policy year, as this one did, creating an ambiguity within the policy that must be decided in favor of the Insureds; that such denial was contrary to applicable law because ACE was not prejudiced by the timing of the notice of the spill event; that the reporting and cooperation provision is otherwise contrary to law in that, among other deficiencies, it creates a shorter statute of limitations period than New Hampshire law allows, and therefore is unenforceable, and for such other reasons as may become apparent based on information disclosed in discovery.

37.     In addition to the foregoing declaration, Plaintiffs seek their attorneys fees and costs for this action, as provided by applicable statutes and rules.

38.     New Hampshire law is clear that "where the insurer was not prejudiced by a delay in reporting, the failure of the insured to timely notify the insurer of a claim was not a material breach of the policy which would excuse the company from performance." Dover Mills Partnership v. Commercial Union Ins. Companies, 144 N.H. 336, 339 (1999) [internal quotations omitted]. The burden is on the insurance carrier to prove prejudice. *See* Id.

39.     There is no question in this matter that ACE was not prejudiced by TRT's June 20, 2018 notice. The lack of prejudice is best illustrated by the fact that ACE did not bother to formally investigate the release for nearly three months after receiving notice. ACE waited three months to conduct a site inspection despite TRT's specific request that ACE's review of the notice move more quickly.

40.     As a result of the foregoing, an actual controversy exists between the Plaintiffs and the Defendant regarding the defense, indemnity or reimbursement obligations of the Defendant and entitles Plaintiff to a declaration that the Defendant is obligated by and in accordance with the terms of the Policy to provide Plaintiffs with a defense, indemnity and reimbursement regarding the Storage Tank Incident, plus attorneys' fees, interest and costs.

## COUNT II: BREACH OF CONTRACT

41.     Plaintiffs incorporate and re-state the allegations set forth in Paragraphs 1-40 as if fully set forth herein.

42.     Defendant ACE, despite requests by Plaintiffs, wrongfully has failed and refused to provide coverage pursuant to its contractual obligations under the Policy. As a result of ACE's breach of the Policy, Plaintiffs have been damaged and will continue to be damaged in an amount in excess of the policy limits, plus enhanced compensatory damages, plus interest, costs and attorneys' fees.

## COUNT III: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

43.     Plaintiffs incorporate and re-state the allegations set forth in Paragraphs 1-42 as if fully set forth herein.

44.     Under New Hampshire law, there is an implied duty of good faith and fair dealing in every contract. *See* Bursey v. Clement, 118 N.H. 412 (1978); *see also* Seaward Const. Co. v.

10

City of Rochester, 118 N.H. 128 (1978). The New Hampshire Supreme Court has expressly held that an obligation of good faith and fair dealing is implied in insurance contracts of the kind at issue here. Lawton v. Great Southwest Fire Insurance Co., 118 N.H. 607, 611 (1978). Insureds who prove a breach of this obligation by the insurer, or who otherwise show bad faith conduct, may recover damages in excess of the policy limits, including consequential damages, plus interest. Jarvis v. Prudential Ins. Co. of America, 122 N.H. 648, 654-55 (1982) citing Lawton, 118 N.H at 611. In determining whether an insurer has breached its obligation of good faith and fair dealing, courts have held that "reasonableness is the touchstone." deVries v. St. Paul Fire & Marine Ins. Co., 716 F.2d 939, 943 (1st Cir. 1983).

45.    Defendant ACE violated its contractual duty of good faith and fair dealing, and acted in bad faith, when it failed to conduct a timely, adequate and proper investigation. ACE also violated its contractual duty of good faith and fair dealing, and acted in bad faith, when it denied coverage on the basis of the reporting and cooperation clause, contrary to the terms of the policy and contrary to applicable law.

46.    As a result of this breach, Plaintiffs have been damaged in an amount in excess of the policy limits, plus enhanced compensatory damages as allowed by law, plus interest, costs, and attorneys' fees.

WHEREFORE, Plaintiffs respectfully request that this court enter judgment in their favor and against the Defendant:

> A. For a declaration pursuant to New Hampshire RSA 491:22 to 491:22-c declaring that the Defendant is obligated by and accordance with the terms of the Policy to defend, indemnify and reimburse expenses Plaintiffs have incurred or may incur related to the release;

11

B. On Counts II and III, for all damages, including enhanced compensatory

damages, that Plaintiffs have suffered and will suffer as a result of the

Defendant's breach of contract and breach of the covenant of good faith and fair

dealing;

C. For its reasonable attorneys' fees, pursuant to statute or common law interest, and

its costs incurred in prosecuting this action; and

D. For such other and further relief as justice may require.

Respectfully submitted,

TRT DEVELOPMENT COMPANY, INC. AND OMNI
MOUNT WASHINGTON, LLC

By Its Attorneys,

McLANE MIDDLETON
PROFESSIONAL ASSOCIATION

Dated:  June 26, 2019       By:    _____

Mark C. Rouvalis, NH Bar No. 6565
mark.rouvalis@mclane.com
Viggo C. Fish, NH Bar No. 267579
viggo.fish@mclane.com
900 Elm Street, P.O. Box 326
Telephone:  603.625.6464

12

# EXHIBIT 1

CHUBB®

**TANKSAFE®**

**ACE American Insurance Company**
**Philadelphia, Pennsylvania**

**Storage Tank Liability Insurance Policy**

## DECLARATIONS

This Policy is issued by the stock insurance company listed above (hereinafter *the Insurer*).

THIS POLICY PROVIDES COVERAGE FOR THIRD-PARTY LIABILITY ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THIS POLICY ALSO PROVIDES COVERAGE FOR FIRST-PARTY REMEDIATION COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY STORAGE TANK INCIDENTS FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND WILL ERODE A SEPARATE AGGREGATE LIMIT OF LIABILITY. LEGAL DEFENSE EXPENSES ARE ALSO SUBJECT TO THE DEDUCTIBLE. THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY FORM, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED TO THIS POLICY FORM, CONSTITUTE THE INSURANCE POLICY.

| Policy No.: G24814634 003 | | Renewal of:  G24814634 002 |
|---|---|---|
| **Item 1.**  First Named Insured:  TRT Development Company - Omni Hotels - Mount Washington | | |
| Principal Address:  4001 Maple Ave  Ste 400 | | |
| Dallas, TX 75219 | | |
| **Item 2.**  Policy Period: From 12:01 A.M. on 12/07/2017 to 12:01 A.M. on 12/07/2018  (Local time at the address shown in Item 1.) | | |
| **Item 3.**  Retroactive Date: **Per Schedule of Covered Storage Tanks** | | |
| **Item 4.**  Limits of Liability: | | |
| | **a. $1,000,000** | Per Storage Tank Incident Limit of Liability (Claims and Remediation Costs) |
| | **b. $1,000,000** | Aggregate Limit of Limit of Liability (Claims and Remediation Costs) for all Storage Tank Incidents |
| | **c. $1,000,000** | Aggregate Limit of Liability for all Legal Defense Expenses for all Storage Tank Incidents |
| | **d. $2,000,000** | Total Policy Aggregate Limit of Liability for all Storage Tank Incidents |
| **Item 5.** Deductible: $5,000 Per Storage Tank Incident | | |
| **Item 6.** Premium:  $4,869.00 | | |
| *This premium shall be 0% minimum-earned as of the inception date of the policy identified in Item 2., above. | | |
| **Item 7.** Notice to Insurer: | | |
| **a.** Notice of Claim or Storage Tank Incident: | | |
| Environmental Risk Claims Manager  Chubb Claims  P.O. Box 5103  Scranton, PA 18505-0510  Fax: (866) 635-5687 | | |
| First Notice Fax: (800) 951-4119  First Notice Email: | | |

CasualtyRiskEnvironmentalFirstNotice@chubb.com

   **b.** All Other Notices:

      Environmental Risk Underwriting Officer
      Chubb Environmental
      P.O. Box 1000
      436 Walnut Street – WA 07A
      Philadelphia, PA 19106

| | |
|---|---|
| **Item 8.** | **Schedule of Covered Underground Storage Tanks:** |
| | Not Applicable |
| **Item 9.** | **Schedule of Covered Aboveground Storage Tanks:** |
| | Per Schedule of Covered Storage Tank Endorsement |
| **Item 10.** Producer Name and Address: | John L Wortham & Son LP |
| | 2727 Allen Parkway |
| | Houston, TX 77019-2189 |

**Policy Form No.** PF-31181(10/10) TankSafe® Storage Tank Liability Insurance Policy

**Endorsements and Notices Attached at Policy Issuance:**

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 001 | PF-31164 | **Schedule Of Covered Storage Tanks Endorsement** |
| 002 | PF-31172 | **Financial Responsibility Condition Endorsement** |
| 003 | PF-31174 | **Loading And Unloading Coverage (Time Element Reporting) Endorsement** |
| 004 | PF-34075 | **Closure, Removal or Replacement Amendatory Endorsement** |
| 005 | CC-1K11h | **Signatures** |
| 006 | PF-23728a | **Terrorism Risk Insurance Act Endorsement** |
| 007 | TRIA11c | **Disclosure Pursuant To Terrorism Risk Insurance Act** |
| | ALL-20887 | **Producer Compensation Practices-Policies Policyholder Notice** |
| | ALL-38009 | **Notice To Policyholders Texas** |
| | ALL-4Y30f | **Information And Complaints** |
| 008 | PF-31847 | **Texas Amendatory Endorsement** |
| 009 | ALL-21101 | **Trade or Economic Sanctions Endorsement** |
| | ILP0010104 | **OFAC Advisory Notice to Policyholders** |

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.**

DATE:   10/27/2017
      MO/DAY/YR.

JOHN J. LUPICA, President
AUTHORIZED REPRESENTATIVE



# TANKSAFE®

## Storage Tank Liability Insurance Policy

**This Policy is issued by the stock insurance company identified in the Declarations (hereinafter *the Insurer*).**

**THIS POLICY PROVIDES COVERAGE FOR THIRD-PARTY LIABILITY ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THIS POLICY ALSO PROVIDES COVERAGE FOR FIRST-PARTY REMEDIATION COSTS ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY STORAGE TANK INCIDENTS FIRST DISCOVERED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND WILL ERODE A SEPARATE AGGREGATE LIMIT OF LIABILITY. LEGAL DEFENSE EXPENSES ARE ALSO SUBJECT TO THE DEDUCTIBLE. THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY FORM, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED TO THIS POLICY FORM, CONSTITUTE THE INSURANCE POLICY.**

Throughout this Policy the words *the Insurer* shall refer to the stock insurance company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section **V., DEFINITIONS,** of this Policy.

In consideration of the payment of the Premium and in reliance upon all statements made in the Application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions, and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "insured" as described herein.

### I.  INSURING AGREEMENTS

The Insurer agrees to pay on behalf of the "insured" for:

**A.** THIRD-PARTY CLAIMS AND FIRST PARTY REMEDIATION COSTS (Coverage **A.**)

"Claims" and "remediation costs", in excess of the deductible amount identified in Item 5. of the Declarations to this Policy, arising out of a "storage tank incident", provided that the "claim" is first made, or the "insured" first discovers the "storage tank incident", during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period". Any such discovery of a "storage tank incident" must be reported to the Insurer, in writing, during the "policy period".

The coverage afforded pursuant to this Coverage **A.** only applies to "storage tank incidents" that first commence on or after the Retroactive Date, if any, identified in Item **3.** of the Declarations and before the end of the "policy period". If no Retroactive Date is identified in the Declarations, or any endorsement attached to this Policy, the "storage tank incident" must first commence during the "policy period".

**B.** LEGAL DEFENSE EXPENSES (Coverage **B.**)

"Legal defense expense", in excess of the deductible amount identified in Item 5. of the Declarations to this Policy, necessarily incurred to respond to a "claim" pursuant to Coverage **A.**, above, to which this insurance applies.

### II.  LIMITS OF LIABILITY AND DEDUCTIBLE

**A.** The Insurer's obligation to pay for "claims", "remediation costs" and "legal defense expenses" shall be reduced by the deductible amount identified in Item **5.** of the Declarations to this Policy. If the sum of the "claim" or "remediation costs" is less than the Per Storage Tank Incident Limit of Liability identified in Item **4.a.** of the Declarations, the Insurer may pay all or part of the deductible amount to effect settlement of any "claim". Upon notification of the Insurer's payment of such deductible amount, the "first named insured" shall promptly reimburse the Insurer for the deductible amount that the Insurer has paid on its behalf.

**B.** One deductible shall apply to all "claims", "remediation costs" and "legal defense expenses" arising from the same, continuous, repeated, or related "storage tank incident".

**C.** With respect to Coverage **A.**, and subject to Subsections **D.** and **F.**, below, the most the Insurer shall pay for all "claims" and "remediation costs" arising out of the same, continuous, repeated, or related "storage tank incident" is the Per Storage Tank Incident Limit of Liability identified in Item **4.a.** of the Declarations to this Policy.

**D.** With respect to Coverage **A.**, and subject to Subsection **F.**, below, the Aggregate Limit of Liability identified in Item **4.b** of the Declarations to this Policy shall be the maximum liability of the Insurer pursuant to this Policy for all "claims" and "remediation costs" arising out of all "storage tank incidents" to which this insurance applies.

**E.** With respect to Coverage **B.**, and Subject to Subsection **F.**, below, the Aggregate Limit of Liability identified in Item **4.c.** of the Declarations to this Policy shall be the maximum liability of the Insurer pursuant to this Policy for "legal defense expense" necessarily incurred to respond to all "claims" arising out of all "storage tank incidents" to which this insurance applies.

**F.** The Total Policy Aggregate Limit of Liability identified in Item **4.d.** of the Declarations to this Policy shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "claims", "remediation costs" and "legal defense expense" arising out of all "storage tank incidents" to which Coverages **A.** and **B.** of this insurance apply.

**G.** If the Insurer or an affiliate has issued claims-made liability coverage for a "covered underground storage tank" or a covered aboveground storage tank" in one or more policy periods, and a "storage tank incident" is first discovered and reported to the Insurer in accordance with the terms and conditions of this Policy, then:

1. All such continuous, repeated, or related "storage tank incidents" that are subsequently reported to the Insurer during later policy periods shall be deemed to be one "storage tank incident" discovered during this "policy period"; and

2. All "claims" arising out of a "storage tank incident" that was discovered during this "policy period", including any continuous, repeated, or related "storage tank incident", shall be deemed to have been first made and reported during this "policy period",

and no other policy shall respond.

## III. DEFENSE AND SETTLEMENT

**A.** The Insurer shall have the right and, subject to the deductible obligation identified in Item **5.** of the Declarations to this Policy, the duty to defend the "insured" against any "claim" to which this insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim" to which this insurance does not apply. The Insurer's duty to defend ends when:

1. The Limits of Liability identified in Items **4.a.**, **4.b.** or **4.d.** are exhausted or are tendered into a court of applicable jurisdiction;

2. The "insured" refuses a settlement offer as provided in Subsection **D.**, below; or

3. The Limits of Liability identified in Items **4.c.** are exhausted,

whichever occurs first.

**B.** The Insurer shall have the right to select legal counsel to represent the "insured" for the investigation, adjustment, and defense of any "claims" covered pursuant to this Policy. Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld. "Legal defense expenses" incurred prior to the selection of legal counsel by the Insurer shall not be covered pursuant to this Policy, or credited against the deductible.

In the event the "insured" is entitled by law to select independent counsel to defend itself at the Insurer's expense, the attorney fees and all other litigation expenses the Insurer must pay to that counsel are limited to the rates the Insurer actually pays to counsel that the Insurer normally retains in the ordinary course of business when defending "claims" or lawsuits of similar complexity in the jurisdiction where the "claim" arose or is being defended. In addition, the "insured" and the Insurer agree that the Insurer may exercise the right to require that such counsel: **1)** have certain minimum qualifications with respect to their competency, including experience in defending "claims" similar to those being asserted against the "insured"; **2)** maintain suitable errors and omissions insurance coverage; **3)** be located within a reasonable proximity to the

jurisdiction of the "claim"; and **4)** agree in writing to respond in a timely manner to the Insurer's requests for information regarding the "claim". The "insured" may at anytime, by its signed consent, freely and fully waive its right to select independent counsel.

**C.** "Legal defense expenses" reduce the Limits of Liability identified in Items **4.c.** and **4.d.** of the Declarations to this Policy and shall be subject to the deductible obligation.

**D.** The Insurer shall present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to the claimants, within the Limits of Liability, and does not impose any additional unreasonable burdens on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend shall end. The "insured" shall defend such "claim" independently. The Insurer's liability pursuant to this Policy shall not exceed the amount for which the "claim" could have been settled if the Insurer's recommendation had been accepted by the "insured", exclusive of the deductible obligation.

## IV.  COVERAGE TERRITORY

The coverage afforded pursuant to this Policy shall only apply to "storage tank incidents" located, and "claims" made, within the United States of America.

## V.  DEFINITIONS

**A.** **"Additional insured"** means any person or entity specifically endorsed onto this Policy as an "additional insured", if any. Such "additional insured" shall maintain only those rights pursuant to this Policy as are specified by endorsement.

**B.** **"Bodily injury"** means physical injury or illness, disease, mental anguish, or emotional distress sustained by any person, including death resulting therefrom.

**C.** **"Claim"** means the written assertion of a legal right received by the "insured" from a third-party, including, but not limited to, suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury" or "property damage" arising out of a "storage tank incident".

**D.** **"Corrective action costs** means expenses necessarily incurred by an "insured" to investigate, quantify, assess, monitor, abate, remove, dispose, treat, neutralize or immobilize "storage tank incidents" to the extent required by 40 CFR Sections 280.60-280.67 and 40 CFR Section 280.72 promulgated by the Federal Environmental Protection Agency, or other "environmental law".

**E.** **"Covered aboveground storage tank"** means a stationary petroleum product-containing tank, and associated piping and appurtenances connected thereto, with less than ten percent (10%) of its volume below ground, but solely to the extent that such tank is identified in the Schedule of Covered Aboveground Storage Tanks identified in Item **9.** of the Declarations to this Policy, or any Schedule of Covered Storage Tanks added to this Policy by endorsement.

**F.** **"Covered underground storage tank"** means a petroleum product-containing tank, and associated piping and appurtenances connected thereto, with more than ten percent (10%) of its volume below ground, but solely to the extent that such tank is identified in the Schedule of Covered Underground Storage Tanks identified in Item **8.** of the Declarations to this Policy, or any Schedule of Covered Storage Tanks added to this Policy by endorsement.

**G.** **"Emergency response"** means actions taken by the "insured" to abate and/or respond to an imminent and substantial threat to human health or the environment arising from a "storage tank incident".

**H.** **"Environmental laws"** means any federal, state, municipal or other local laws, statutes, ordinances, regulations, and all amendments thereto, including state voluntary cleanup programs or risk-based corrective action guidance, governing the liabilities and legal obligations of the "insured" with respect to "covered aboveground storage tanks" or "covered underground storage tanks".

**I.** **"Extended reporting period"** means the additional period of time in which to report a "claim" first made against the "insured" during or subsequent to the end of the "policy period" arising from a "storage tank incident" to which this insurance applies. Such "storage tank incident" must commence on or after any applicable Retroactive Date identified in Item **3.** of the Declarations to this Policy, but before the end of the "policy period". If no Retroactive Date is identified in the Declarations or any endorsement attached to this Policy, the "storage tank incident" must first commence during the "policy period".

**J.** **"First named insured"** means the person or entity as identified in Item **1.** of the Declarations to this Policy. The "first named insured" is the party responsible for the payment of any premiums and the payment of any

applicable deductible amounts. The "first named insured" shall also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notices, including notice of cancellation or non-renewal, receipt and acceptance of any endorsements or any other changes to this Policy, return of any premium, assignment of any interest pursuant to this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.

K. **"Government action"** means action taken or liability imposed by any federal, state, municipal or other local government agency or body acting pursuant to the authority of "environmental laws".

L. **"Insured"** means the "first named insured", any "named insured", any "additional insured", and any past or present director or officer of, partner in, or employee of, any "insured" while acting within the scope of his or her duties as such.

M. **"Legal defense expense"** means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured in the investigation, adjustment, or defense of a "claim".

N. **"Named insured"** means any person or entity specifically endorsed onto this Policy as a "named insured", if any. Such "named insured" shall maintain the same scope of coverage pursuant to this Policy as the "first named insured".

O. **"Natural resource damages"** means damages for, injury to, destruction of, or loss of fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other similar resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, any state or local government, or any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

P. **"Policy period"** means that period of time identified in Item **2.** of the Declarations to this Policy, or any shorter period resulting from the cancellation of this Policy.

Q. **"Pollution condition"** means any spilling, leaking, emitting, discharging, dispersing, seeping, escaping or releasing of the contents of any "covered underground storage tank" or "covered aboveground storage tank" into surface soils, subsurface soils, surface water, sediments or groundwater.

R. **"Property damage"** means:

1. Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

2. Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

3. Diminished value of tangible property owned by a third-party; or

4. "Natural resource damages".

S. **"Remediation costs"** means :

1. With respect to "covered aboveground storage tanks", only, reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize a "storage tank incident" to the extent required by "environmental law"; and

2. With respect to "covered underground ground storage tanks", only, "corrective action costs".

**"Remediation costs"** shall also include:

1. Reasonable legal cost, where such cost has been incurred by an "insured" with the written consent of the Insurer; and

2. "Replacement costs".

T. **"Replacement costs"** means reasonable expenses required to restore, repair or replace real property, or physical improvements thereto, damaged during the course of responding to a "storage tank incident". "Replacement costs" do not include costs associated with improvements or betterments, or any costs associated with the repair, replacement, or upgrading of any "covered underground storage tank" or "covered aboveground storage tank".

**U. "Responsible insured"** means any employee of a "named insured" responsible for environmental affairs, control, or compliance, and any officer of, director of, or partner in, a "named insured".

**V. "Storage tank incident"** means a "pollution condition" resulting from a "covered underground storage tank" or a "covered aboveground storage tank". The entirety of continuous or repeated "pollution conditions" resulting from the same "covered underground storage tank" or "covered aboveground storage tank" shall be deemed to be one "storage tank incident".

**W. "Terrorism"** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

    a. Use or threat of force or violence; or

    b. Commission or threat of a dangerous act; or

    c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

    a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**X. "War** means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

## VI. EXCLUSIONS

This insurance does not apply to:

### A. Contractual Liability

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to any liability of others assumed by an "insured" through contract or agreement, except if the liability would have attached to such "insured" in the absence of such contract or agreement.

This exclusion does not apply to those contracts identified in the Schedule of Insured Contracts endorsed to this Policy, if any.

### B. Employers Liability

"Claims" for "bodily injury" to:

1. An "insured" or an employee of its parent, subsidiary or affiliate

    a. Arising out of and in the course of employment by the "insured" or its parent, subsidiary or affiliate; or

    b. Performing duties related to the conduct of the "named insured's" business.

2. The spouse, child, parent, brother or sister of such "insured" or employee of its parent, subsidiary or affiliate as a consequence of Paragraph 1., above.

This exclusion shall apply:

1. Whether the "insured" may be liable as an employer or in any other capacity;

2. To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury"; and

3. To all "legal defense expense" associated with such "claims".

## C. Fines and Penalties

Payment of fines, penalties, punitive, exemplary or multiplied damages, or any associated "claims" seeking exclusively injunctive relief in addition to such fines, penalties or damages.

This exclusion shall apply to any "legal defense expense" associated with such fines, penalties or damages.

## D. First-Party Property Damage

"Claims" or "legal defense expenses" arising out of or related to damage to real or personal property owned by, leased to, loaned to, or rented by, an "insured", or otherwise in the care, custody, or control of an "insured".

This exclusion does not apply to "remediation costs".

## E. Fraud or Misrepresentation

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to fraudulent acts or material misrepresentations on the part of any "insured", which would have affected the Insurer's decision to issue this Policy pursuant to the financial terms identified in the Declarations of this Policy.

## F. Known Conditions

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to "storage tank incidents" in existence prior to the "policy period" and reported to a "responsible insured", but not disclosed to the Insurer in writing.

## G. Insured's Internal Expenses

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to expenses incurred by an "insured" for services performed by salaried staff or employees of an "insured".

## H. Intentional Non-Compliance

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to the intentional disregard of, or knowing, willful or deliberate non-compliance with, any statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or executive, judicial or administrative order by a "responsible insured".

## I. Lead-Based Paint and Asbestos

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to the presence of lead-based paint, asbestos, or asbestos-containing materials, in, on, or applied to any structure, including, but not limited to, a "covered underground storage tank" or "covered aboveground storage tank".

## J. Nuclear Hazard

1. "Claims", "remediation costs" or "legal defense expenses":

   a. With respect to which the "insured" pursuant to this Policy is also an "insured" pursuant to a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an "insured" pursuant to any such policy but for its termination upon exhaustion of its limits of liability; or

   b. Resulting from the hazardous properties of nuclear material and with respect to which:

      (1) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

      (2) The "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, pursuant to any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. "Claims", "remediation costs" or "legal defense expenses" arising out of or related to the hazardous properties of nuclear material, if:

   a. The nuclear material:

      (1) Is at any nuclear facility owned by, or operated by or on behalf of the "insured"; or

      (2) Has been discharged or dispersed therefrom;

b. The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the "insured"; or

c. The "bodily injury" or "property damage" arises out of the furnishing by the "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, located within the United States of America, its territories or possessions or Canada.

3. As used in this exclusion:

a. Hazardous properties include radioactive, toxic, or explosive properties.

b. Nuclear material means source material, special nuclear material, or byproduct material.

c. Source material, special nuclear material, and byproduct material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

d. Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

e. Waste means any waste material:

(1) Containing byproduct material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content; and

(2) Resulting from the operation by any person or organization of any nuclear facility included pursuant to the first two paragraphs of the definition of nuclear facility;

f. Nuclear facility means:

(1) Any nuclear reactor;

(2) Any equipment or device designed or used for

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing spent fuel; or

(c) Handling, processing or packaging waste;

(3) Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste;

(5) The site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. "Property damage" includes all forms of radioactive contamination of property.

### K. Regulatory Compliance

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to any "storage tank incident" involving a "covered aboveground storage tank" or "covered underground storage tank" that was not in compliance with all applicable "environmental laws" prior to such "storage tank incident".

### L. Storage Tank Contents

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to costs associated with the loss, removal, replacement, re-use, or recycling of the contents of any covered underground storage tank" or "covered aboveground storage tank".

**M. War or Terrorism**

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to "storage tank incidents" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

## VII. REPORTING AND COOPERATION

A. The "insured" must see to it that the Insurer receives written notice of any "claim" or "storage tank incident", as soon as possible, but in no event more than seven (7) days after a "responsible insured" first became aware of, or should have become aware of, such "claim" or "storage tank incident". Such notice shall be provided to the Insurer at the address identified in Item 7.a. of the Declarations to this Policy and should include reasonably detailed information as to:

   1. The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim" or "storage tank incident";

   2. The identity of "covered aboveground storage tank" or "covered underground storage tank";

   3. The nature of the "claim" or "storage tank incident"; and

   4. Any steps undertaken by the "insured" to respond to the "claim" or "storage tank incident".

B. The "insured" must:

   1. Immediately send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim";

   2. Authorize the Insurer to obtain records and other information;

   3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

   4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of "bodily injury", "property damage", "remediation costs" or "legal defense expense" to which this Policy may apply; and

   5. Provide the Insurer with such information and cooperation as it may reasonably require.

C. No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim" without the written consent of the Insurer. Nor shall any "insured" incur any "remediation costs" without the prior express written consent of the Insurer, except in the event of an "emergency response".

D. Upon the discovery of a "storage tank incident", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental laws". The "insured" must cooperate with the Insurer in the selection and retention of qualified contractors or consultants. The Insurer shall have the primary responsibility, but not the duty, to select, retain, and oversee such contractors or consultants, on behalf of the "insured". Any "remediation costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the deductible obligation and Limits of Liability of this Policy.

## VIII. EXTENDED REPORTING PERIOD

A. The "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following cancellation, as described Section IX., GENERAL CONDITIONS, Subsection A., or nonrenewal.

B. "Extended reporting periods" shall not reinstate or increase the Limits of Liability. "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided. A "claim" first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, shall be deemed to have been made on the last day of the "policy period".

C. Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "named insured" shall have a one hundred and eighty (180) day basic "extended reporting period" without additional charge.

D. Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty (30)

months for not more than two hundred percent (200%) of the full Premium identified in Item **6.** of the Declarations to this Policy. Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

1. Makes a written request, to the address identified in Item **7.b.** of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

2. Pays the additional Premium when due. If that additional Premium is paid when due, the supplemental "extended reporting period" may not be cancelled by the Insurer, provided that all other terms and conditions of the Policy are met.

## IX. GENERAL CONDITIONS

### A. Cancellation

1. This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address identified in Item **7.b.** of the Declarations to this Policy, written notice stating when such cancellation shall be effective.

2. This Policy may be cancelled by the Insurer for the following reasons:

   a. Non-payment of premium;

   b. Fraud or material misrepresentation on the part of any "insured; or

   c. Change in use or operation of a "covered underground storage tank" or "covered aboveground storage tank" from the use contemplated in the Application and supporting materials that materially increases the likelihood of "claims" or "storage tank incidents",

   by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

   Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation, or any other "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

3. In the event of cancellation, the premium percentage identified in Item **6.** of the Declarations to this Policy shall be the minimum-earned premium upon the inception date of this Policy. Thereafter, the remaining unearned premium, if any, shall be deemed earned by the Insurer on a *pro rata* basis over the remainder of the "policy period". Any unearned premium amounts due the "first named insured" upon cancellation of this Policy shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of cancellation.

### B. Inspection and Audit

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect any "covered aboveground storage tank" or "covered underground storage tank". The "insured" shall have the concurrent right to collect split samples. Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon, shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with "environmental laws", or any other laws.

The Insurer may examine and audit the "insured's" books and records during this policy period" and extensions thereof and within three (3) years after the final termination of this Policy.

### C. Legal Action Against the Insurer

No person or organization other than an "insured" has a right pursuant to this Policy:

1. To join the Insurer as a party or otherwise bring the Insurer into a suit against any "insured"; or

2. To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

## D. Bankruptcy

The insolvency or bankruptcy of any "insured" or any "insured's" estate shall not relieve the Insurer of its obligations pursuant to this Policy. However, any such insolvency or bankruptcy of the "insured" or any "insured's" estate shall not relieve the "first named insured" of its deductible obligation pursuant to this Policy. This insurance shall not replace any other insurance to which this Policy is excess, nor shall this Policy drop down to be primary, in the event of the insolvency or bankruptcy of any underlying insurer.

## E. Subrogation

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The "insureds" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

## F. Representations

By accepting this Policy, the "first named insured" agrees that:

1. The statements in the Declarations, schedules, and application for this Policy are accurate and complete;

2. Those statements are based upon representations the "first named insured" made to the Insurer; and

3. This Policy has been issued in reliance upon the "first named insured's" representations.

## G. Separation of Insureds

Except with respect to the Limits of Liability, Cancellation Conditions **2.a.** and **2.c.**, the Fraud or Misrepresentation Exclusion, the Intentional Non-Compliance Exclusion, the Known Conditions Exclusion, the Regulatory Compliance Exclusion and any obligations specifically assigned to the "first named insured", this Policy applies:

1. As if each "named insured" were the only "insured"; and

2. Separately to each "named insured" against whom a "claim" is made.

## H. Other Insurance

If other valid and collectible insurance is available to any "insured" covering a loss also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

## I. Jurisdiction and Venue

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer and the "insured" shall submit to the exclusive jurisdiction of the State of New York and shall comply with all requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to remove an action to a United States District Court.

**J. Choice of Law**

All matters arising hereunder including questions relating to the validity, interpretation, performance, and enforcement of this Policy, including the rights, duties and obligations thereunder, shall be determined in accordance with the law and practices of the State of New York.

**K. Changes and Assignment**

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

**L. Headings**

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

**M. Consent**

Where the consent of the Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

# SCHEDULE OF COVERED STORAGE TANKS ENDORSEMENT

| Named Insured<br>TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number<br>001 |
|---|---|---|---|
| Policy Symbol<br>TSP | Policy Number<br>G24814634 003 | Policy Period<br>12/07/2017 to 12/07/2018 | Effective Date of Endorsement<br>12/07/2017 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer agree that the storage tanks identified in the Schedule of Covered Storage Tanks, below, have been added to this Policy as "covered underground storage tanks" or "covered aboveground storage tanks", as applicable.

### Schedule of Covered Storage Tanks

| Insured's Facility Name<br>and Address | Tank ID<br>No. | Tank Size<br>(gal.) | Tank Type<br>(UST or AST) | Retroactive Date |
|---|---|---|---|---|
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 1 | 25,000 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 2 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 3 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 4 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 5 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 6 | 500 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 7 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire<br>03575 | 8 | 350 | AST | 10/04/2013 |
| Mount Washington Hotel, Rt 302, Carroll<br>New Hampshire | 9 | 275 | AST | 10/04/2013 |

PF-31164 (09/10)

Page 1 of 3

03575

| | | | | |
|---|---|---|---|---|
| Mount Washington Hotel,Rt 302,Carroll<br>New Hampshire<br>03575 | 10 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel,Rt 302,Carroll<br>New Hampshire<br>03575 | 11 | 275 | AST | 10/04/2013 |
| Mount Washington Hotel,Rt 302,Carroll<br>New Hampshire<br>03575 | 12 | 275 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 1 | 330 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 2 | 150 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 3 | 250 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 4 | 330 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 5 | 10,000 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 6 | 500 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 7 | 550 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 8 | 275 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire | 9 | 275 | AST | 10/04/2013 |

03575

| | | | | |
|---|---|---|---|---|
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 10 | 275 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 11 | 275 | AST | 10/04/2013 |
| Bretton Woods Ski Area,310 Mt<br>Washington Rd,Bretton Woods<br>New Hampshire<br>03575 | 12 | 2,500 | AST | 10/04/2013 |
| Rosenbrook Recreation Center,210 Mt<br>Washington Hotel Dr,Carroll<br>New Hampshire<br>03575 | 1 | 10,000 | AST | 10/04/2013 |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## FINANCIAL RESPONSIBILITY CONDITION ENDORSEMENT

| Named Insured<br>TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number<br>002 |
|---|---|---|---|
| Policy Symbol<br>TSP | Policy Number<br>G24814634 003 | Policy Period<br>12/07/2017 to 12/07/2018 | Effective Date of Endorsement<br>12/07/2017 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section IX., CONDITIONS, of this Policy is hereby amended by addition of the following:

#### Financial Responsibility And Reimbursement

If this Policy is issued to certify an "insured's" compliance with Federal or State financial responsibility requirements with respect to "covered aboveground storage tanks" or "covered underground storage tanks", the Insurer shall comply with such financial responsibility requirements. Notwithstanding the foregoing, the "first named insured" agrees to reimburse the Insurer for any payment made by the Insurer on behalf of any "insured", which the Insurer would not have otherwise been obligated to make under the terms and conditions of this Policy, but for: 1) the agreement contained in the first sentence of this condition, above; 2) the Insurer's issuance of an amendatory endorsement to this Policy tracking specific, obligatory Federal or State statutory or regulatory language required for use of insurance as a storage tank financial responsibility mechanism; or 3) the Insurer's issuance of a Certificate evidencing this Policy satisfies the requirements of any Federal or State storage tank financial responsibility program.


All other terms and conditions of this Policy remain unchanged.


_____

Authorized Representative

## LOADING AND UNLOADING COVERAGE (Time Element Reporting) ENDORSEMENT

| Named Insured<br>TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number<br>003 |
|---|---|---|---|
| Policy Symbol<br>TSP | Policy Number<br>G24814634 003 | Policy Period<br>12/07/2017 to 12/07/2018 | Effective Date of Endorsement<br>12/07/2017 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

**THE COVERAGE AFFORDED PURSUANT TO THIS ENDORSEMENT IS LIMITED BY A DEFINED REPORTING PERIOD AND, THEREFORE, COVERS ONLY CLAIMS AND REMEDIATION COSTS THAT ARISE OUT OF LOADING AND UNLOADING RELATED POLLUTION CONDITIONS THAT ARE REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR THE DEFINED REPORTING PERIOD CONTAINED HEREIN. PLEASE READ THIS ENDORSEMENT CAREFULLY.**

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section **V., DEFINITIONS**, Subsection **Q.**, of this Policy is hereby amended by addition of the following:

   **Q. "Pollution condition"** also means the inadvertent spilling, leaking, discharging, escaping or releasing of the contents of any "covered underground storage tank" or "covered aboveground storage tank" into surface soils, subsurface soils, surface water, sediments or groundwater during the loading or unloading of such "covered underground storage tank" or "covered aboveground storage tank".

II.   Notwithstanding anything contained in the general reporting obligations identified in **Section VII.** of this Policy which might be construed otherwise, it is a condition precedent to the coverage afforded pursuant to this Endorsement for loading and unloading-related "storage tank incident" that the "insured" provide written notice of such "storage tank incident" to the Insurer within **seventy-two (72) hours** of the event giving rise to such "storage tank incident".

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative

PF-31174 (09/10)                                                                                                      Page 1 of 1

## CLOSURE, REMOVAL OR REPLACEMENT AMENDATORY ENDORSEMENT

| Named Insured TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number 004 |
|---|---|---|---|
| Policy Symbol TSP | Policy Number G24814634 003 | Policy Period 12/07/2017 to 12/07/2018 | Effective Date of Endorsement 12/07/2017 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

## TankSafe® Storage Tank Liability Insurance Policy

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section **VI., EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

#### Out-of-Service or Replacement Tanks

"Claims", "remediation costs" or "legal defense expense" arising out of or related to "storage tank incidents" in any way involving a "covered aboveground storage tank" or "covered underground storage tank" first commencing after such "covered aboveground storage tank" or "covered underground storage tank" has been: **1)** closed-in place; or **2)** replaced, during the "policy period", unless the Insurer has been provided with prior written notice of such action in strict conformance with Section **VII., Reporting and Cooperation**, of this Policy, and the Insurer's intent to continue to provide prospective coverage for such "covered aboveground storage tank" or "covered underground storage tank" has been explicitly confirmed via endorsement to this Policy.

II.  Section **VII., Reporting and Cooperation**, of this Policy is hereby amended by addition of the following:

#### Notice of Removal or Replacement

The "first named insured" must provide written notice to the Insurer of any "insured's" intent to repair, close-in-place, remove from service and/or replace any "covered underground storage tanks" or "covered aboveground storage tanks". Such notice must be provided to the Insurer at the address identified in Item **7.a.** no fewer than five (5) business days prior to the commencement date of any intrusive repair, closure-in-place, removal from service and/or replacement activities pertaining to the "covered underground storage tanks" or "covered aboveground storage tanks", and any operational system components thereof.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

## SIGNATURES

| Named Insured TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number 005 |
|---|---|---|---|
| Policy Symbol TSP | Policy Number G24814634 003 | Policy Period 12/07/2017 to 12/07/2018 | Effective Date of Endorsement 12/07/2017 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

CC-1K11h (03/14)

## TERRORISM RISK INSURANCE ACT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| TRT Development Company - Omni Hotels - Mount Washington | | | 006 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| TSP | G24814634 003 | 12/07/2017 to 12/07/2018 | 12/07/2017 |
| Issued By (Name of Insurance Company) | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Terrorism Premium (Certified Acts of Terrorism): $0

In consideration of the additional premium indicated above, which is included in the Premium as listed on the Declarations, the "insured" and the Insurer, hereby agree to the following Policy change(s):

A. With respect to any "hostile acts" or "terrorism" exclusions contained in this Policy, or attached to this Policy by endorsement, such exclusions do not apply to a "certified act of terrorism", as defined in Paragraph **C.**, below.

B. With respect to any one or more "certified acts of terrorism", the Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act (**"TRIA"**), due to the application of any clause which results in a cap on the Insurer's liability for payments for terrorism losses.

C. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to TRIA. The criteria contained TRIA for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million attributable to all types of insurance subject to TRIA; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

D. Notwithstanding any coverage that may otherwise be afforded for punitive damages under this Policy, if any, coverage shall not be afforded for damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

E. The coverage afforded under this endorsement shall expire at the earlier of the following dates:

1. The end of the "policy period", as indicated on the Declarations; or

2. **December 31, 2020.**

F. The premium for "certified acts of terrorism" coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in TRIA. The federal program established by TRIA is scheduled to terminate at the end of December 31, 2020, unless extended by the federal government.

**G.** If this "policy period" extends beyond December 31, 2020, please note that the TRIA premium, above, is premised on the parties' assumption that TRIA will later be extended  through the end of the "policy period", thereby mandating that Insurer make available coverage for "certified acts of terrorism" for the entire "policy period".  In the event that TRIA is not extended beyond December 31, 2020, or otherwise expires at some point during the "policy "period", the Insurer will refund the unearned portion of our TRIA premium to the insured on a pro-rata basis.  In the event that new TRIA extension or replacement legislation is enacted requiring the Insurer to offer coverage for terrorism that is materially different than the coverage requirements included in the current version of TRIA that expires on December 31, 2020, the Insurer reserves the right to re-price and prospectively modify terrorism coverage to conform with the statutory requirements and risks presented by any such new legislation.

All other terms and conditions of the policy remain unchanged.

Authorized Agent

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number 007 |
|---|---|---|---|
| Policy Symbol TSP | Policy Number G24814634 003 | Policy Period 12/07/2017 to 12/07/2018 | Effective Date of Endorsement 12/07/2017 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

### Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year   , the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $0.

_____

Authorized Representative

Includes copyrighted material of Insurance Services office, Inc., with its permission.

TRIA11c (01/15)



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)



# NOTICE TO POLICYHOLDERS
# TEXAS

## POLICY EXCLUSIONS

The Texas Department of Insurance requires that policies containing certain exclusions be specifically pointed out to our policyholders. In compliance with this provision, this notice is to advise you that one or more of the following exclusions may be attached to your policy by way of a specific policy endorsement. These are not all of the exclusions contained in your policy, and you are advised to read your policy and all of the attached endorsements carefully, and discuss any questions with your agent or a company representative. (Check all that apply).

☐ Asbestos Exclusion

☐ Employment Related Practices Exclusion

☐ Extremely Low Frequency / Electromagnetic Field (ELF/EMF) Exclusion

☐ Land Subsidence and Land Condemnation Exclusion

☐ Lead Exclusion

☐ Mold, Fungi or Bacteria Exclusion

☐ Pollution Exclusion

☐ Silica or Silica Dust Exclusion

☐ Tobacco Exclusion

☐ _____



# Texas Notice –
# Information and Complaints

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

### 1 (800) 352-4462

You may also write to the Company at:

Chubb
Customer Services
PO Box 1000
Philadelphia, PA 19106-3703

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1 (800) 252-3439

You may write the Texas Department of Insurance:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: *www.tdi.texas.gov*
E-mail: *ConsumerProtection@tdi.texas.gov*

### PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de la Compañía para obtener información o para presentar una queja al:

### 1 (800) 352-4462

Usted también puede escribir a la Compañía:

Chubb
Customer Services
PO Box 1000
Philadelphia, PA 19106-3703

Usted puede comunicarse con el Departmento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al:

### 1 (800) 252-3439

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Sitio web: *www.tdi.texas.gov*
E-mail: *ConsumerProtection@tdi.texas.gov*

### DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente o la compañía primero. Si la disputa no es resuelta, puede comunicarse con el Departamento de Seguros de Texas

### ADJUNTE ESTE AVISO A SU PÓLIZA:
Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

ALL-4Y30f (06/15)

## TEXAS AMENDATORY ENDORSEMENT

| Named Insured<br>TRT Development Company - Omni Hotels - Mount Washington | | | Endorsement Number<br>008 |
|---|---|---|---|
| Policy Symbol<br>TSP | Policy Number<br>G24814634 003 | Policy Period<br>12/07/2017 to 12/07/2018 | Effective Date of Endorsement<br>12/07/2017 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

## TankSafe℠ Storage Tank Liability Insurance Policy

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  Section III., **DEFENSE AND SETTLEMENT**, of this Policy is hereby amended by addition of the following:

The Insurer will notify the relevant "insured" in writing of:

1.  An initial offer to compromise or settle a "claim made or a suit brought against such "insured" under this Policy. The notice shall be given within ten (10) days after the date on which the offer is made to the Insurer.

2.  Any settlement of a "claim" made or a suit brought against such "insured" under this Policy. The notice shall be given within thirty (30) days after the date of the settlement.

II.  Section VI., **EXCLUSIONS**, Subsection **M., War or Terrorism**, of this Policy is hereby deleted in its entirety and replaced with the following:

### M.  War or Terrorism

"Claims", "remediation costs" or "legal defense expenses" arising out of or related to "storage tank incidents" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion shall only apply if one or more of the following are attributable to the incident of "terrorism":

1.  The total of insured damage to all types of property from related incidents of "terrorism" within a seventy-two (72) hour period exceed $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Insurer will include all insured damage sustained by property of all persons and entities affected by the related incidents of "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions;

2.  Fifty or more persons sustain death or serious physical injury from related incidents of "terrorism" within a seventy-two (72) hour period. For the purposes of this provision, serious physical injury means:

    a.  Physical injury that involves a substantial risk of death;

    b.  Protracted and obvious physical disfigurement; or

    c.  Protracted loss of or impairment of the function of a bodily member or organ;

3.  The incident of "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination;

4. The incident of "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that the incident of "terrorism" was effectuated in whole or in part to release such materials.

Paragraphs 1. and 2., immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this terrorism exclusion will apply to that incident. When the terrorism exclusion applies to an incident of "terrorism", there is no coverage under this Policy.

In the event of any incident of "terrorism" that is not subject to the terrorism exclusion, coverage does not apply to any "claims", "remediation costs" and "legal defense expenses" that are otherwise excluded under this Policy.

Multiple incidents of "terrorism" which occur within a seventy-two (72) hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

III. Section **IX., GENERAL CONDITIONS**, Subsection **A., Cancellation**, of this Policy is hereby deleted in its entirety and replaced with the following:

## A. Cancellation and Nonrenewal

1. This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address listed in Item **7.b.** of the Declarations, written notice stating when such cancellation shall be effective. In the event of cancellation by the "first named insured", the minimum earned Premium percentage indicated on the Declarations shall apply as of the date coverage is bound.

2. This Policy may be cancelled by the Insurer for the following reasons:

   a. Non-payment of Premium;

   b. This Policy was issued because of fraud or material misrepresentation;

   c. An increase in hazard within the control of an "insured" that would produce a rate increase;

   d. The Insurer's loss of reinsurance for all or a part of the risk covered by the Policy; or

   e. The Insurer is placed in supervision, conservatorship, or receivership and the cancellation is approved or directed by the supervisor, conservator, or receiver.

   by mailing to the "first named insured", and, to the extent that address information for any other "named insureds" was provided to the Insurer at the time of underwriting this Policy, such other "named insureds", at the "first named insured's" or such "named insured's" last known address, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

3. If the Insurer decides not to renew this Policy, the Insurer will mail written notice of nonrenewal, stating the reasons for nonrenewal, to the "first named insured" at least sixty (60) days prior to the expiration of this Policy. If notice is mailed later than sixty (60) days before the end of the "policy period", coverage shall remain in effect until sixty-one (61) days after the date on which the notice is mailed.

   Any notice of nonrenewal will be mailed to the address listed in Item **7.b.** of the Declarations. If notice is mailed, proof of mailing will be sufficient proof of notice.

   Earned premium for any period of coverage that extends beyond the end of the "policy period" due to untimely non-renewal shall be computed *pro rata* based on the expiring premium.

<u>The Insurer shall not cancel or refuse to renew this Policy based solely on the fact that any "insured" is an elected official.</u>

**IV.** Section **IX.**, **GENERAL CONDITIONS**, Subsection **I.**, **Jurisdiction and Venue**, and Subsection **J.**, **Choice of Law**, of this Policy re hereby deleted in their entirety.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| TRT Development Company - Omni Hotels - Mount Washington | | | 009 |
| **Policy Symbol** | **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| TSP | G24814634 003 | 12/07/2017 to 12/07/2018 | 12/07/2017 |
| **Issued By (Name of Insurance Company)** | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

_____

Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.                                                    Page 1 of 1

IL P 001 01 04

# U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

EXHIBIT 2

CHUBB North American Claims – Environmental
in Exchange Place, 6th Floor
Jersey City, New Jersey 07302

O: (201) 479.6435
F: (866) 635.5698
E: brian.hong@chubb.com

**Brian Hong**
Senior Claim Examiner

October 17, 2018

## VIA CERTIFIED MAIL

TRT Development Company – Omni Hotels – Mount Washington
4001 Maple Avenue
Dallas, Texas 75219
Attn: Mary-Margaret Burnham (mm.burnham@omnihotels.com)

CHUBB

Re:  Insured:        TRT Development Company
     Location:       Route 302, Carrol, New Hampshire
     Date of Loss:   May 29, 2018
     Policy No.:     TSP G24814634 003 (12/07/2017 – 12/07/2018)
     Chubb Claim:    KY18K2331417

Dear Ms. Burnham:

Chubb North American Claims, on behalf of ACE American Insurance Company ("Chubb" or the "Insurer"), previously acknowledged receipt of TRT Development Company ("TRT" or the "Insured") tender regarding above-referenced matter. Regrettably, the purpose of this letter is to advise that the Policy does not afford coverage for the above-referenced matter for reasons set forth herein.

We understand that you may have questions after reading this letter regarding our position and its practical impact. Please feel free to contact me regarding any questions about our coverage position.

### The Claim

Based on the information provided, the Insured reported that on or about May 29, 2018, they discovered a #6 heating oil fuel leak from the 25,000 gallon aboveground storage tank ("AST") and boiler system located at Route 302 in Carrol, New Hampshire ("Site"). It was noted that shortly after the discovery, the Insured contacted Horizons Engineering to assist with the initial spill response and investigation activities. It is further understood that on the same day, the Insured also reported the fuel release to the Town of Carrol Fire Department, the National Response Center, and the New Hampshire Department of Environmental Services ("NHDES"). Notice of this matter was provided to Chubb on June 20, 2018.

### The Policy

The Insurer's Chubb TANKSAFE® Storage Tanks Liability Insurance Policy TSP G24814634 003 (the "Policy"), issued to the insured, provides coverage on a discovered and reported basis with a Policy Period from December 7, 2017 to December 7, 2018. The Policy has a limit of liability of $1,000,000 per storage tank incident (claims and remediation costs), a $1,000,000 aggregate limit of liability (claims and remediation costs), an aggregate limit of $1,000,000 (legal defense expenses) and a total policy aggregate limit of $2,000,000 for all storage tank incidents. The Policy is subject to a $5,000 deductible per storage tank incident.

The Schedule of Covered Storage Tanks in *Endorsement 001* lists twelve (12) aboveground storage tanks ("ASTs"), at the above referenced location, each with a Retroactive Date of October 4, 2013.

Although Chubb is relying on the entire contents of the Policy in informing you regarding coverage, Chubb specifically directs your attention to the following definitions, conditions, and exclusions contained in the Policy.

### Coverage Analysis



**A. Third-Party Claims and First Party Remediation Costs** (Coverage A.) Insuring Agreement I.A., provides coverage for "claims" and "remediation costs", in excess of the deductible amount identified in Item **5.** of the Declarations to this Policy, arising out of a "storage tank incident", provided that the "claim" is first made, or the "insured" first discovers the "storage tank incident", during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period". Any such discovery of a "storage tank incident" must be reported to the Insurer, in writing, during the "policy period". The coverage afforded pursuant to this Coverage A. only applies to "storage tank incidents" that first commence on or after the Retroactive Date, if any, identified in Item **3.** of the Declarations and before the end of the "policy period". If no Retroactive Date is identified in the Declarations, or any endorsement attached to this Policy, the "storage tank incident" must first commence during the "policy period". Chubb reserves all rights based on Coverage A.

### Potential Coverage Issues

### VII. REPORTING AND COOPERATION

**A.** The "insured" must see to it that the Insurer receives written notice of any "claim" or "storage tank incident", as soon as possible, but in no event more than seven (7) days after a "responsible insured" first became aware of, or should have become aware of, such "claim" or "storage tank incident". Such notice shall be provided to the Insurer at the address identified in Item **7.a.** of the Declarations to this Policy and should include reasonably detailed information as to:

**1.** The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim" or "storage tank incident";

**2.** The identity of "covered aboveground storage tank" or "covered underground storage tank";

**3.** The nature of the "claim" or "storage tank incident"; and

**4.** Any steps undertaken by the "insured" to respond to the "claim" or "storage tank incident".

### Analysis of Policy Provisions Relevant to this Matter

As outlined above, the Policy makes clear the Insured is required to provide notice to the Insurer in the event of a "storage tank incident" as soon as reasonably possible, but in any event, not more than seven (7) days after a "responsible insured" first became aware of, or should have become aware of, a "storage tank incident".

In this instance, the Insured reported that on or about May 29, 2018, they discovered a #6

heating oil fuel leak from the 25,000 gallon AST and boiler system located at the above referenced Site. It is our understanding that the Insured retained Horizons Engineering to assist with the initial spill response activities and that they also reported the release to the Town of Carrol Fire Department, the National Response Center, and the NHDES on same day. Notice of this matter was provided to Chubb on June 20, 2018.In light of the fact that the Policy's notice requirement has not been met, which is a condition precedent to coverage, the Insurer must regretfully deny coverage for this matter on this basis.



While the foregoing is determinative of Chubb's coverage position, we take this time to set forth certain coverage issues raised by this incident that may apply to preclude or otherwise limit coverage for this matter. Several exclusions appear relevant as this insurance does not apply to Contractual Liability-(Exclusion **A.**), Fines and Penalties (Exclusion **C.**) First-Party Property Damage (Exclusion **D.**), the Insured's Internal Expenses (Exclusion **G.**), Regulatory Compliance (Exclusion **K.**) and Storage Tank Contents (Exclusion **L.**). Chubb reserves the right to deny coverage on the aforementioned exclusions.

**Exclusions which Limit or Preclude Coverage.**

In light of the foregoing, Chubb respectfully disclaims coverage under the Policy and for reasons discussed above, Chubb has determined that it has no obligation to defend, indemnify or reimburse you or any other party in connection with this matter. Chubb's coverage position discussed herein is based upon the facts in this matter, as we now know them. This being said, Chubb welcomes any additional information from the insured with respect to this matter. In this connection, I ask that you please direct all responses to this letter to my attention.

The foregoing communication is without prejudice to Chubb's rights pursuant to the terms, conditions, provisions and exclusions of the Policy. Chubb reserves the right to assert any other coverage or policy defense that may now be applicable or is later determined to be applicable upon further information provided. No act of any agent, servant, or employee of Chubb, including its attorneys, shall constitute a waiver or estoppel with respect to these rights.

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at: HTTP://WWW.DFS.NY.GOV/CONSUMER/FILEACOMPLAINT.HTM or you may write to or visit the Consumer Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: 25 Beaver Street, New York, NY 10004; One Commerce Plaza, Albany, NY 12257; 163B Mineola Boulevard, Mineola, NY 11501; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, NY 14202.

We hope this letter is helpful in explaining our coverage position in this matter. In closing, allow me to reiterate that we value you as a customer and encourage you to contact us should you have any questions regarding coverage or this letter in general at (201) 479-6435.

Very truly yours,

BRIAN HONG

Cc:   John L. Wortham & Son, LP.
      2727 Allen Parkway
      Houston, Texas 77019



**SHERIFF SCOTT E. HILLIARD**
333 Daniel Webster Hwy
Boscawen, NH 03303
Phone: 603-796-6600

ACE AMERICAN INSURANCE COMPANY
21 SOUTH FRUIT ST
CONCORD, NH 03301

NH INSURANCE DEPARTMENT
RECEIVED
JUL 1 8 2019

AFFIDAVIT OF SERVICE

MERRIMACK, SS.                                7/**18**/19

I, DEPUTY GLENN E LARAMIE JR, this day at **11:40** (a.m)/p.m., summoned
the within named defendant, ACE AMERICAN INSURANCE COMPANY, by leaving at
the office of John Elias, Insurance Commissioner for the State of New
Hampshire, its true and lawful attorney for the service of process under,
and by virtue of, Chapter 405:10 NH RSA as amended, two true and attested
copies of this Summons and Complaint and I paid said Commissioner for the
State twenty-five ($25.00) dollars as their fee for accepting service.

FEES

| | |
|---|---|
| Service | $25.00 |
| Postage | 1.00 |
| Travel | 15.00 |
| Pd NH Ins. Commissioner | 25.00 |
| TOTAL | $66.00 |

DEPUTY GLENN E LARAMIE JR
Merrimack County Sheriff's Office

**A True Copy Attest**

Deputy Sheriff

8867
NH INSURANCE DEPARTMENT
21 South Fruit Street, Suite 14
Concord NH 03301

7016 1370 0001 3383 2021

Certified Return Receipt
INCOMING LEGAL
JUN 2 3 2019



U.S POSTAGE >> PITNE

ZIP 03301   $ 006
02  1W
0001403591 JUL  1

Saverio M. Rocca, Esq.
Ace American Insurance
Company
436 Walnut Street
Philadelphia, PA 19106

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

**Saverio M. Rocca, Esq.**
**Ace American Insurance**
**Company**
**436 Walnut Street**
**Philadelphia, PA 19106**

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)* | C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*    7016 1370 0001 3383 2021

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540