**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**TRT Development Company, Inc.
and Omni Mount Washington, LLC**</u>

    v.

<u>**ACE American Insurance Company**</u>

Case No. 19-cv-851-PB
Opinion No. 2021 DNH 162

<u>**MEMORANDUM AND ORDER**</u>

    This case arises out of a fuel storage tank incident at the Omni Mount Washington Hotel in Bretton Woods, New Hampshire. The hotel's owners, TRT Development Company, Inc. and Omni Mount Washington, LLC (together, "TRT"), seek a declaratory judgment that their insurer, ACE American Insurance Company ("ACE"), must provide coverage for that incident under a claims-made liability insurance policy. The policy covers remediation costs arising out of a storage tank incident that is discovered and reported to the insurer during the policy period. A separate reporting requirement embedded in the policy requires the insured to provide notice to the insurer within seven days of discovering such an incident. TRT gave notice to ACE within the policy period but more than seven days after discovering the incident. Although ACE suffered no prejudice, it denied coverage because of the late notice. The issue raised by the parties' cross-motions for summary judgment is whether proof of prejudice is required to deny coverage under a claims-made policy when notice is late but given before the end of the policy period.

I.  **BACKGROUND**

A.  **Insurance Policy**

In October 2017, TRT procured a Storage Tank Liability Insurance Policy from ACE, Policy No. G24814634003 (the "Policy"), which covered the Omni Mount Washington Hotel's 25,000-gallon aboveground fuel storage tank.  The Policy was in effect from December 7, 2017, until December 7, 2018.  The Policy includes three separate reporting requirements.

On the Declarations page, the Policy states in bold capital letters:

> This policy provides coverage for third-party liability on a claims-made and reported basis, which covers only claims first made against the insured and reported to the insurer, in writing, during the policy period or any applicable extended reporting period. This policy also provides coverage for first-party remediation costs on a discovered and reported basis, which covers only storage tank incidents first discovered and reported to the insurer, in writing, during the policy period.

Doc. No. 5 at 15.  The same language is repeated on the first page of the Policy.  See Doc. No. 5 at 18.

Similar language appears in the "Insuring Agreements" portion of the Policy (Section I):

> The insurer agrees to pay on behalf of the insured for . . . claims and remediation costs . . . arising out of a storage tank incident, provided that the claim is first made, or the insured first discovers the storage tank incident, during the policy period.  Any such claim must be reported to the insurer, in writing, during the policy period or any applicable extended reporting period.  Any such discovery of a storage tank incident must be reported to the insurer, in writing, during the policy period.

Doc. No. 5 at 18 (cleaned up).  I refer to the Policy's requirement that the insured report a claim or a storage tank incident during the policy period as the claim-reporting provision.

Section VII of the Policy, titled "Reporting and Cooperation," contains a second reporting requirement:

> The insured must see to it that the insurer receives written notice of any claim or storage tank incident, as soon as possible, but in no event more than seven (7) days after a responsible insured first became aware of, or should have been aware of, such claim or storage tank incident.

Doc. No. 5 at 25 (cleaned up).  The remainder of that provision specifies where notice must be sent and what information it should include.  I refer to this reporting requirement as the notice-of-claim provision.

The Policy contains a third reporting requirement that applies to loading and unloading-related storage tank incidents. Contained in an endorsement to the Policy, that provision reads:

> Notwithstanding anything contained in the general reporting obligations identified in Section VII of this Policy which might be construed otherwise, it is a condition precedent to the coverage afforded pursuant to this Endorsement for loading and unloading-related storage tank incident that the insured provide written notice of such storage tank incident to the insurer within seventy-two (72) hours of the event giving rise to such storage tank incident.

Doc. No. 5 at 33 (cleaned up).

B.   **Storage Tank Incident**

On May 26, 2018, staff at the Omni Mount Washington Hotel observed what appeared to be oil on the side of an embankment in a wooded area near the hotel's boiler house, where the hotel's aboveground fuel storage tank was located.  The hotel staff promptly reported the discovery to TRT's environmental consultant, Horizons Engineering Inc. ("Horizons").

On May 29, personnel from Horizons conducted a preliminary investigation at the site and observed an oily sheen in an adjacent wetland and in surface waters in the vicinity of the boiler house.  They believed that the contamination was caused by a release of fuel oil from the hotel's storage tank and associated piping located in the boiler house.  That same day, TRT and Horizons gave notice of the spill to the Town of Carroll Fire Department, the United States Coast Guard National Response Center, and the New Hampshire Department of Environmental Services.  TRT also hired a regional emergency cleanup contractor to immediately commence cleanup and remediation work at the site.  The cleanup efforts continued through June 18.

On June 20, 2018, well within the policy period but twenty-two days after TRT first became aware of the oil spill, TRT notified ACE of the storage tank incident.  After conducting an on-site investigation on September 24, 2018, ACE denied coverage for remediation costs that TRT incurred in response to the incident.  The sole basis for the denial was TRT's failure to

4

notify ACE within seven days of discovering the incident, in breach of the Policy's notice-of-claim provision.

The parties agree that the storage tank incident was otherwise eligible for coverage under the Policy. The parties likewise agree that ACE was not prejudiced by TRT's two-week delay in reporting the incident.

### C. Procedural Posture

In June 2019, TRT filed this action in New Hampshire Superior Court, seeking a declaratory judgment that ACE is required to provide coverage under the terms of the Policy for remediation costs associated with the storage tank incident. TRT also asserted claims for breach of contract and breach of the implied duty of good faith and fair dealing. ACE removed the case to federal court.

After discovery was completed, the parties filed cross-motions for summary judgment. I held oral argument on the motions on June 22, 2021. At that hearing, the parties agreed that no facts material to TRT's request for declaratory judgment are in dispute. The parties also confirmed that they are not asking me to certify any legal questions to the New Hampshire Supreme Court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (cleaned up). A "genuine dispute" exists if a jury could resolve the disputed fact in the nonmovant's favor. Ellis v. Fidelity Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

On cross-motions for summary judgment, the standard of review is applied to each motion separately. See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006); see also Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review."). Thus, I must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

### III. ANALYSIS

The parties agree that the Policy is a claims-made policy that, in addition to third-party claims, covers remediation costs associated with "storage tank incidents first discovered and reported to the insurer, in writing, during the policy period." TRT discovered the storage tank incident and reported it to ACE during the policy period, satisfying the Policy's claim-reporting provision. But because TRT waited twenty-two

days to provide that notice, TRT breached the notice-of-claim provision, which required that notice be given within seven days of TRT discovering the incident.  ACE did not suffer any prejudice due to the delay.  The question before me is whether New Hampshire law requires an insurer to show prejudice resulting from late notice in order to deny coverage in these circumstances.  Although the New Hampshire Supreme Court has not squarely addressed this issue, its reasoning in closely analogous cases and persuasive authorities from other jurisdictions lead me to conclude that the court would apply the notice-prejudice rule here.

    Under New Hampshire law, interpretation of an insurance policy is a question of law.  Town of Londonderry v. N.H. Mun. Ass'n Prop. Liab. Ins. Tr., Inc., 140 N.H. 440, 441 (1995). "Where disputed terms are not defined in a policy or by State judicial precedent, [courts] apply an objective standard, construing the terms in context and as would a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole."  Catholic Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 701 (2005) (quoting Panciocco v. Lawyers Title Ins. Corp., 147 N.H. 610, 613 (2002)). Ambiguities in a policy must be resolved in favor of coverage. Philbrick v. Liberty Mut. Fire Ins. Co., 156 N.H. 389, 391 (2007).  Further, "the burden of proving lack of insurance

coverage is on the insurer." Maville v. Peerless Ins. Co., 141 N.H. 317, 320 (1996) (cleaned up).

The New Hampshire Supreme Court has held that whether an insurer must prove prejudice to deny coverage based on late notice of a claim or loss depends on the type of policy and the type of notice at issue. See Bates v. Vt. Mut. Ins. Co., 157 N.H. 391, 396-98 (2008); Bianco Prof'l Ass'n v. Home Ins. Co., 144 N.H. 288, 295-96 (1999). The two primary types of liability insurance policies are occurrence policies and claims-made policies.[1] To understand the impact of late notice, it is important to outline the major differences behind these policies and the different types of notice requirements each may contain.

Occurrence policies provide coverage for claims "based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period." Bianco, 144 N.H. at 295-96 (quoting Yancey v. Floyd West & Co., 755 S.W.2d 914, 918 (Tex. Ct. App. 1988)). In other words, it is the timing of the event causing the injury, not the assertion of a claim or its reporting to the insurer,

---

[1] A few opinions have referred to claims-made policies as "discovery" policies. See, e.g., DiLuglio v. New Eng. Ins. Co., 959 F.2d 355, 358 (1st Cir. 1992). This characterization is particularly apt where, as here, the Policy covers not only third-party liability but also first-party losses on a "discovered and reported basis." Following the parties' lead and consistent with the vast majority of cases, however, I refer to the Policy as a claims-made policy.

8

that triggers coverage. So long as the act or omission that gave rise to a claim occurred during the policy period, the insurer may have to provide coverage for a claim made long after the policy period has expired. See id.

An occurrence policy may nonetheless require that an insured provide notice of a claim "as soon as practicable" or within a specified time period. See, e.g., Bates, 157 N.H. at 397-98. Courts refer to this type of notice requirement as a notice-of-claim provision. See Restatement of the Law of Liability Insurance § 35 (2019). The purpose of requiring prompt notice of a claim is "to afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate of its rights and liabilities before it is obliged to pay." 13 Steven Plitt et al., Couch on Insurance § 186:14 (3rd ed. 2021); see Lumbermens Mut. Cas. Co. v. Oliver, 115 N.H. 141, 143 (1975).

By contrast, in a claims-made policy, the insured event is a combination of two requirements: (1) the claim must be made against the insured by a third party, or a covered loss must be discovered by the insured, during the policy period, and (2) the claim or loss must be reported to the insurer during that same policy period. See Bianco, 144 N.H. at 296.[2] The incident that

---

[2] Some courts and treatises have labeled such policies as "claims-made-and-reported" policies. See, e.g., First Am. Title Ins. Co. v. Cont'l Cas. Co., 709 F.3d 1170, 1172 (5th Cir. 2013); 7 Couch on Insurance § 102:22. This nomenclature helps

9

gives rise to a claim can occur before the start of the policy period; the trigger for coverage is the discovery <u>and</u> reporting of a claim within that period.  As a result, "notice [to the insurer] within the policy period 'is of the essence in determining whether coverage exists'" under a claims-made policy.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 49 (1st Cir. 2009) (quoting Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 30 (Mass. 1990)); <u>see</u> Bianco, 144 N.H. at 296.  Considered the defining feature of claims-made policies, this notice requirement is typically referred to as the claim-reporting provision.  <u>See</u> Restatement of the Law of Liability Insurance § 35.  One of its main objectives is to reduce insurance rate setting uncertainties by shortening the period between the payment of premiums and the payment of claims.  <u>See</u> Chas. T. Main, 551 N.E.2d at 30 ("The closer in

---

to distinguish claims-made policies that require reporting a claim within the policy period from the less-common "pure claims-made" policies, which provide coverage for claims made against the insured during the policy period and reported to the insurer "as soon as practicable," thus "ensuring that coverage is provided if a claim is made during the final hours of an insured's policy period even if it is reported after the expiration of the policy." Jeffrey P. Griffin, The Inapplicability of the Notice-Prejudice Rule to Pure Claims-Made Insurance Policies, 42 Conn. L. Rev. 235, 236, 247 (2009); <u>see</u> 7 Couch on Insurance § 102:22 n.8 ("Pure claims-made [] liability policies shift to the insured only the risk of claims incurred but not made whereas claims-made-and-reported policies shift the risks both of claims incurred but not made and of claims made but not reported.").  In this Memorandum and Order, I follow the New Hampshire Supreme Court's usage of the term "claims-made" to refer to "claims-made-and-reported" policies. <u>See</u> Bates, 157 N.H. at 397-98; Bianco, 144 N.H. at 296.

time that the insured event and the insurer's payoff are, the more predictable the amount of the payment will be, and the more likely it is that rates will fairly reflect the risks taken by the insurer."). In fact, typically "claims-made policies are less expensive than occurrence policies, largely because the insurer may 'close its books' on a policy at its expiration and thus attain a level of predictability unattainable under standard occurrence policies." Craft v. Phila. Indem. Ins. Co., 560 F. App'x 710, 713 (10th Cir. 2014) (cleaned up); see DiLuglio v. New Eng. Ins. Co., 959 F.2d 355, 359 (1st Cir. 1992) (noting that "the reporting period prescribed in a claims-made insurance policy defines the scope of coverage, and allows the insurer to set its premiums below the levels charged for comparable occurrence policies") (cleaned up).

In addition to a claim-reporting provision, a claims-made policy can contain a notice-of-claim provision that requires the insured to notify the insurer of a claim or loss "as soon as practicable" or within a stated period. See 13 Couch on Insurance § 186:13; Chas. T. Main, 551 N.E.2d at 29. As with an occurrence policy, the purpose of this type of notice requirement in a claims-made policy is to maximize the insurer's opportunity to investigate and defend legal actions. See Restatement of the Law of Liability Insurance § 35; Chas. T. Main, 551 N.E.2d at 29.

The New Hampshire Supreme Court has focused on these salient differences between occurrence and claims-made policies when determining whether proof of prejudice is required to deny coverage based on late notice.  Where an occurrence policy is at issue, the court has held that the insurer must prove prejudice to deny coverage based on the insured's untimely notice of a claim.  Bates, 157 N.H. at 396-97; Bianco, 144 N.H. at 295-96.  The court explained that providing prompt notice of a claim is subsidiary to the event that triggers coverage in an occurrence policy, which again is the underlying incident, not the making of a claim against the insured or its reporting to the insurer.  See Bianco, 144 N.H. at 295-96.

By contrast, a showing of prejudice is not required to deny coverage under a claims-made policy where the insurer does not receive notice of a claim during the policy period.  Id. at 296.  The court reasoned in Bianco that prejudice is presumed to exist in these circumstances because requiring an insurer to provide coverage for a claim reported after the end of a claims-made policy period effectively expands the policy's grant of coverage.  See id.; see also Chas. T. Main, 551 N.E.2d at 30 (reasoning that requiring proof of prejudice when notice of a claim is given outside the policy period "would defeat the fundamental concept on which claims-made policies are premised" because it would frustrate "the primary purpose of insuring claims rather than occurrences.").  In Catholic Medical Center,

12

the court clarified that this is a conclusive presumption of prejudice, meaning that an insured may not rebut it by showing that the insurer actually suffered no prejudice. See 151 N.H. at 704-05.

Although the Policy at issue in this case is a claims-made policy, the facts here are distinguishable from Bianco in that the storage tank incident, while not reported within seven days as required by the notice-of-claim provision, was reported during the policy period. Thus, the concern that animated the court in Bianco – that requiring a showing of prejudice would defeat the purpose of a claims-made policy by allowing claims reported outside of the policy period – does not exist here. See 144 N.H. at 296. Unlike in Bianco, ACE had yet to "close the books" on the Policy because the policy period was still in effect when the incident was reported to ACE. Thus, excusing late notice in this case would not rewrite a fundamental term of the insurance contract and expand the scope of coverage.

The Policy's notice-of-claim provision bears more similarity to the notice requirement in the occurrence policy that was breached in Bates. In that case, the provision specified that the insured "must see to it" that the insurer is "notified as soon as practicable of an occurrence or an offense which may result in a claim." Bates, 157 N.H. at 398 (cleaned up). Here, the Policy states that the insured "must see to it that the insurer receives written notice of any claim or storage

tank incident, as soon as possible, but in no event more than seven (7) days" after its discovery.  Both provisions serve the same purpose – "protect[ing] the insurer's rights by affording it an opportunity to conduct timely investigation which promotes early settlement and prevents fraudulent claims." Lumbermens, 115 N.H. at 143.  In other words, the function of both provisions is to protect the insurer's interest from being prejudiced.  Thus, absent prejudice, the reason behind these notice-of-claim provisions is lacking.  Further, neither provision operates substantively to define the scope of coverage.  See Bates, 157 N.H. at 398.  As was the case in Bates, requiring ACE to cover the storage tank incident would in no way expand the Policy's grant of coverage.  Thus, the same reasoning that supported applying the notice-prejudice rule in Bates applies here.

Several courts in other jurisdictions have likewise held that the insurer must prove prejudice when an insured notifies it of a claim within a claims-made policy period but fails to provide notice within the time specified in a notice-of-claim provision.  See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co., 288 S.W.3d 374, 381-82 (Tex. 2009); Fin. Indus. Corp. v. XL Specialty Ins. Co., 285 S.W.3d 877, 878-79 (Tex. 2009); Fulton Bellows, LLC v. Fed. Ins. Co., 662 F. Supp. 2d 976, 994-95 (E.D. Tenn. 2009).  But see Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 129 A.3d 1069,

14

1081 (N.J. 2016); R.H. Enters. v. ACE Am. Ins. Co., No. 1:17-cv-22421-KMM, 2018 WL 3412873, at *3 (S.D. Fla. June 10, 2018). Like the New Hampshire Supreme Court, the courts that have applied the notice-prejudice rule focused on the distinct purposes served by the different notice provisions in a claims-made policy.

The Texas Supreme Court in Prodigy considered whether, under a claims-made policy, a denial of coverage can be based on an insured's "failure to comply with the policy provision requiring that notice of a claim be given 'as soon as practicable,'" when (1) notice of the claim was provided before the reporting deadline specified in the policy; and (2) the insurer was not prejudiced by the delay." 288 S.W.3d at 377. The court held that the untimely notice in those circumstances does "not defeat coverage in the absence of prejudice to the insurer." Id. at 382-83.  This holding was based on an inquiry into whether the "as soon as practicable" language was "an essential part of the bargained-for exchange" under a claims-made policy. See id. at 378-82.  The court concluded that it was not. See id. at 382. Such promptness, the court reasoned, will "maximize the insurer's opportunity to investigate, set reserves," and plan for possible payment of a claim. Id. at 380 (quoting 13 Couch On Insurance § 186:13) (cleaned up). By contrast, the requirement that a claim be made within the policy period "is directed to the temporal boundaries of the policy's

15

basic coverage terms [and] . . . defines the limits of the insurer's obligation." Id. (quoting 13 Couch On Insurance § 186:13). Importantly, the same is true of "a notice provision requiring that a claim be reported to the insurer during the policy period or within a specific number of days thereafter." Id. Such a provision "defines the scope of coverage by providing a certain date after which an insurer knows it is no longer liable under the policy." Id. (cleaned up). Thus, the focus of the court in Prodigy was the essential purpose of a claims-made policy: that the insured benefit from, and be constrained by, the necessity of providing notice within the policy period. That purpose was fulfilled when the insured gave notice during the policy period. The subsidiary requirement of prompt notice was designed to avoid prejudicing the insurer's interests, so it logically follows that proof of prejudice is required. See id. at 382.

The Prodigy court found persuasive the Massachusetts Supreme Judicial Court's decision in Chas. T. Main, which the New Hampshire Supreme Court cited approvingly in Bianco as well. See id. at 381; Bianco, 144 N.H. at 296. In holding that notice within a claims-made policy period was per se prejudicial to the insurer, the court in Chas. T. Main distinguished notice-of-claim provisions from claim-reporting provisions in claims-made policies. That court first recognized that notice-of-claim provisions frequently appear in both claims-made and occurrence

16

policies, but that claim-reporting provisions are unique to claims-made policies.  See Chas. T. Main, 551 N.E.2d at 29.  The court then explained that those notice requirements serve distinct purposes.  Whereas "the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists," the court reasoned, a notice-of-claim provision merely serves an investigative function, so excusing its breach is not tantamount to extending coverage.  Id. at 29-30.  Thus, the court held that the notice-prejudice rule "applies only to the 'as soon as practicable' type of notice and not to the 'within the policy year' type of reporting requirement."  Id. at 30.

ACE points to two opinions where courts have refused to apply the notice-prejudice rule in similar circumstances.  I am unpersuaded by this line of cases because the approach those courts have taken is starkly different from the reasoning that the New Hampshire Supreme Court employed in Bianco and Bates.  The Supreme Court of New Jersey in Templo Fuente found that the prejudice requirement turns on the sophistication of the parties: "We have historically approached 'claims made' and 'occurrence' policies differently due in large part to the differences between the policyholders themselves."  129 A.3d at 1080-81.  The court did not examine the distinct purposes that such policies serve or the different types of notices in each.

17

Rather, because both parties were sophisticated business entities, the court did not require the insurer to prove prejudice to deny coverage based on late notice, even though notice was given during the policy period.  See id.

The other case ACE cites involved the interpretation of another ACE policy identical to the Policy in this case.  See R.H. Enters., 2018 WL 3412873, at *3.  Without distinguishing between a policy's reporting requirements, the district court in that case held that late notice entitles the insurer to a rebuttable presumption of prejudice under Florida law.  See id.  This is distinguishable from New Hampshire law, which, as I explained before, either requires proof of prejudice or creates a conclusive presumption of prejudice, depending on the type of policy and type of notice at issue.[3]

---

[3] ACE also argues that prejudice cannot be required because the notice-of-claim provision is a condition precedent to coverage.  This argument is meritless.  As an interpretive matter, there is a strong argument that this provision is not a condition precedent.  The Policy's 72-hour notice provision applicable to loading and unloading-related storage tank incidents specifically denominates timely notice as a "condition precedent" to recovery.  By contrast, the notice-of-claim provision does not include similar explicit language indicating that a failure to provide notice within seven days will result in a forfeiture of the insured's rights.  At the very least, this leaves the Policy as a whole ambiguous as to whether the notice-of-claim provision is a condition precedent.  Considering that an ambiguity in a policy must be resolved in favor of the insured and that conditions precedent are disfavored in New Hampshire, it is unlikely that the New Hampshire Supreme Court would construe this notice-of-claim provision as a condition precedent.  See Santos v. Metro. Prop. and Cas. Ins. Co., 171 N.H. 682, 688 (2019) ("Conditions precedent are not favored, however, and we will not construe contractual provisions as

Accordingly, I conclude that the New Hampshire Supreme Court, if faced with the issue, would hold in accordance with the Texas Supreme Court that the notice-prejudice rule applies when an insured reports a claim under a claims-made policy during the policy period but fails to provide notice within the time specified in a notice-of-claim provision. Because TRT reported the storage tank incident during the policy period and ACE was not prejudiced by the two-week reporting delay, ACE may not deny coverage under the Policy on the ground of late notice.

## IV. CONCLUSION

I grant TRT's motion for summary judgment (Doc. No. 43) to the extent it seeks a ruling that ACE may not deny coverage under the Policy based on TRT's late notice of the storage tank

---

conditions precedent unless required by the plain language of the agreement."); Philbrick, 156 N.H. at 391 ("[I]f the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer.").

More importantly, as the Texas Supreme Court held in Prodigy, whether a notice-of-claim provision is deemed a condition precedent is not relevant to the prejudice inquiry. See 288 S.W.3d at 378. In that case, the policy expressly characterized timely notice as a "condition precedent" to coverage, but the court held it was nonetheless necessary "to go further to determine whether prejudice is, or is not, required." Id. The New Hampshire Supreme Court has likewise analyzed the prejudice requirement without determining whether the policy language rendered coverage contingent on timely notice. Indeed, in Bianco, the court cited with approval a Missouri case that applied the notice-prejudice rule notwithstanding the policy's characterization of the notice requirement as a "condition precedent." See 144 N.H. at 296 (citing Cont'l Cas. Co. v. Maxwell, 799 S.W.2d 882, 886-87 (Mo. Ct. App. 1990)).

incident where TRT reported the incident within the claims-made policy period and ACE admittedly suffered no prejudice from the reporting delay.  I deny ACE's motion for summary judgment (Doc. No. 41) with respect to the same.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

October 13, 2021

cc: Counsel of record